UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ABC SOILS, INC. and <br> MARCIA BERGER, <br>     Plaintiffs, <br>     v. <br> DRS POWER TECHNOLOGY, INC. <br>     Defendant. | CIVIL ACTION <br> NO. 18-11653-JGD |

# MEMORANDUM OF DECISION AND ORDER ON DEFENDANT'S MOTION TO DISMISS

July 11, 2019

DEIN, U.S.M.J.

## I. INTRODUCTION

Plaintiffs ABC Soils, Inc. ("ABC") and Marcia Berger brought this action against DRS Power Technology, Inc. ("DRS"), asserting claims relating to a contract for the excavation and environmental evaluation of a project site. DRS, a defense contractor for the United States Navy, hired ABC as a subcontractor to excavate the site in preparation for the installation of a tank for the Navy. ABC allegedly ran into unforeseen difficulties during the excavation that dramatically increased project costs, but was assured by DRS that ABC would be paid for the additional expense. At the conclusion of the project, the parties were unable to reach an agreement as to the proper amount owed. ABC filed suit on August 4, 2018, asserting a claim under Mass. Gen. Laws ch. 93A ("ch. 93A") (Count I), a claim for breach of contract (Count II), and a claim for negligent infliction of emotional distress ("NIED") (Count III).

This matter is presently before the court on the "Defendant's Motion to Dismiss" (Docket No. 6), wherein the defendant asserts that that the plaintiffs' ch. 93A claim and NIED claim must be dismissed.[1] For the reasons detailed herein, this court concludes that ABC has failed to make out a claim under Mass. Gen. Laws. ch. 93A or a claim for negligent infliction of emotional distress. Therefore, DRS's Motion to Dismiss is ALLOWED as to Counts I and III of the plaintiffs' Complaint.

## II. STATEMENT OF FACTS

This court summarizes the facts as alleged in the plaintiffs' Complaint, with additional uncontested facts where noted. Marcia Berger is the president of ABC, an environmental and excavation company headquartered in Massachusetts. (Docket No. 1 ("Complaint") at 1). DRS is a major defense contractor that works extensively with the United States Navy. (Id.).

In 2014, DRS entered into a contract with ABC for ABC to install a sub-floor tank pit at a DRS facility in Massachusetts and to perform associated environmental clean-up. (Id. ¶¶ 5, 7). The purchase order for the transaction specified that the upper budget for the project was $235,000 and that the cost of all work performed within the scope of the project was not to exceed $335,000 without the approval of DRS. (Id. ¶ 13, Ex. A). The purchase order incorporated the terms of a task order that ABC had submitted to DRS. (Id. ¶11). The task

---

[1] In its Memorandum in Support of the Motion to Dismiss, the defendant also asserted that the Complaint should be dismissed in its entirety because the Complaint and the Summons misidentified the defendant as "DRS Technologies, Inc." (See Docket No. 7 at 10-11). The plaintiffs have since been granted leave to amend the complaint to correct this deficiency. (See Docket No. 16). At a hearing held before the court on June 5, 2019 on the defendant's Motion to Dismiss, the defendant conceded that it was no longer seeking to dismiss the plaintiffs' Complaint in its entirety in light of the amendment correcting the error.

2

order indicated that "Should the work extend beyond the scope of work outlined herein, The Client [DRS] agrees to pay for all additional expenses incurred by ABC Soils." (Id. ¶ 12).

During the excavation, ABC discovered unanticipated environmental contamination and subsurface debris. (Id. ¶ 16). Specifically, the site was found to contain industrial debris, such as oven parts and railroad tracks, as well as concrete and other debris contaminated with polychlorinated biphenyls (PCBs). (Id. ¶¶ 17, 19). As a result, ABC was forced to engage in significant environmental remediation and removal on the project site. (Id. ¶ 18). To properly treat the contaminated debris and concrete, ABC had to power wash the debris before removing it for off-site disposal. (Id. ¶ 20). Additionally, ABC discovered that a concrete floor on site was five feet thick and reinforced with rebar and steel mesh, necessitating significant expense to remove it. (Id. ¶¶ 22, 23).

Following the excavation, DRS requested that the pit be made deeper and larger, resulting in a 10.2% increase in volume from what had originally been agreed upon. (Id. ¶ 33). At the same time, DRS instructed ABC not to excavate to groundwater level, which forced ABC to undertake additional procedures to comply with the request. (Id. ¶ 34). ABC was required to install special, custom-built concrete forms into the pit due to the jagged and uneven nature of the excavation. (Id. ¶ 36). ABC had to remove heavy timbers from the excavation site as the concrete forms were installed, which cost additional time and effort. (Id. ¶ 37).

ABC notified DRS of the cost increases associated with the PCB contamination and extensive debris. (Id. ¶ 26). DRS employees were also on site daily to witness the progress of the excavation. (Id. ¶ 27). A project manager for DRS assured ABC that ABC would be

compensated for the additional work. (Id. ¶ 28). Officers for the United States Navy also surveyed the project site and pressured ABC to finish the project. (Id. ¶ 29).

As a result of the unexpected subsurface conditions, ABC incurred expenses well in excess of original cost estimates for the project. (See id. ¶¶ 38-39). DRS has allegedly refused to fully compensate ABC for these additional costs, despite its earlier promise. (See id. ¶ 44). At one point, negotiations as to the amount due to ABC were ongoing, but stalled after a large staff reorganization at DRS. (Id. ¶ 43). To date, DRS has paid ABC $175,000. (Id. ¶ 42). The plaintiffs allege that DRS owes ABC an additional $275,941.97 plus interest. (Id. ¶ 45). DRS offered to settle the parties' payment dispute for $121, 520, but ABC rejected the offer as insufficient and significantly less than what was contractually owed. (Id. ¶ 46).

As a result of DRS's unwillingness to pay what ABC believes it is owed, ABC was forced to cut back on expenses and reduce its staff. (Id. ¶ 47). ABC lost a key employee who took approximately $500,000 in business with him when he left. (Id. ¶ 50). ABC was also forced to borrow money to make up for the loss in revenue. (Id. ¶ 49). Plaintiff Berger began working longer hours to cover company overhead. (Id. ¶ 48). As a result, Ms. Berger lost sleep, experienced anxiety and headaches, and missed out on time with her family. (Id. ¶ 51). Ms. Berger's son experienced difficulties in school, further exacerbating her emotional distress. (Id. ¶ 52). As a result of the financial hardship on Ms. Berger, tensions arose in her marriage and her spouse ultimately filed for divorce. (Id. ¶ 53).

Additional facts will be provided below where appropriate.

## III. ANALYSIS

### A. Standard of Review

Motions to dismiss under Rule 12(b)(6) test the sufficiency of the pleadings. When confronted with such a motion, the court accepts as true all well-pleaded facts and draws all reasonable inferences in favor of the plaintiff. See Cooperman v. Individual Inc., 171 F.3d 43, 46 (1st Cir. 1999). Dismissal is only appropriate if the complaint, so viewed, fails to allege a "plausible entitlement to relief." Rodriguez-Ortiz v. Margo Caribe, Inc., 490 F.3d 92, 95 (1st Cir. 2007) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 559, 127 S. Ct. 1955, 1967, 167 L. Ed. 2d 929 (2007)).

As the First Circuit has explained, in considering the merits of a motion to dismiss, the court proceeds in two steps. Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012). First, we "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." Id. at 55. Second, we "take the complaint's well-pled (*i.e.*, non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." Id. Dismissal is only appropriate if the complaint, so viewed, fails to allege "a plausible entitlement to relief." Rodriguez-Ortiz, 490 F.3d at 95 (quoting Bell Atl. Corp., 550 U.S. at 559, 127 S. Ct. at 1967). "Plausible . . . means something more than merely possible[.]" Schatz, 669 F.3d at 55. "The bottom line is that the combined allegations, taken as true, must state a plausible, not merely conceivable, case for relief." Carrero-Ojeda v. Autoridad de Energia Electrica, 755 F.3d 711, 718 (1st Cir. 2014) (internal citations and quotations omitted). "Engaging in this plausibility inquiry is 'a context-specific task that requires the reviewing court to draw on its

5

judicial experience and common sense.'" Germanowski v. Harris, 854 F.3d 68, 72 (1st Cir. 2017) (quoting Ashcroft v. Iqbal, 556 U.S. 662, 679, 129 S. Ct. 1937, 1950, 173 L. Ed. 2d 868 (2009)).

### B. Ch. 93A Claim for Unfair or Deceptive Practices

DRS has moved to dismiss the plaintiffs' claim under Mass. Gen. Laws ch. 93A, arguing that the plaintiffs have failed to set forth any factual allegations amounting to unfair or deceptive conduct. As an initial matter, the plaintiffs assert that the validity of their ch. 93A claim is a question of fact that should not be evaluated on a motion to dismiss. To be sure, liability under ch. 93A "is decided case-by-case, and Massachusetts courts have consistently emphasized the fact-specific nature of the inquiry." Arthur D. Little, Inc. v. Dooyang Corp., 147 F.3d 47, 55 (1st Cir. 1998) (internal quotations and citation omitted). However, while the issue of "whether a particular set of acts, in their factual setting, is unfair or deceptive is a question of fact, the boundaries of what may qualify for consideration as a Chapter 93A violation is a question of law." Id. at 54 (citation omitted).

"Under §§ 2 and 11 of Chapter 93A, it is unlawful for those engaged in trade or commerce to employ 'unfair methods of competition and unfair or deceptive acts or practices' in business transactions with others engaged in trade or commerce." Id. at 55 (citation omitted). While Chapter 93A does not define "unfair" or "deceptive" practices, the statute encompasses conduct that is "within the penumbra of some . . . concept of unfairness [or deceptiveness]; is immoral, unethical, oppressive, or unscrupulous; and causes substantial injury to other businessmen." Kenda Corp., Inc. v. Pot O'Gold Money Leagues, Inc., 329 F.3d 216, 234 (1st Cir. 2003) (citation omitted). This court concludes that the plaintiffs' allegations do not rise to the level of such unfair or deceptive practices.

6

To assert a claim under ch. 93A, a plaintiff "must illustrate something beyond a mere good faith dispute, failure to pay, or simple breach of contract." Woods v. Wells Fargo Bank, N.A., 733 F.3d 349, 358 (1st Cir. 2013). For a breach of contract to rise to the level of a ch. 93A claim, the breach "must be both knowing and intended to secure 'unbargained-for benefits' to the detriment of the other party." Zabin v. Picciotto, 73 Mass. App. Ct. 141, 169, 896 N.E.2d 937, 963 (2008) (citation omitted). Additionally, "[t]he breaching party's conduct must exceed the level of mere self-interest, rising instead to the level of commercial extortion or a similar degree of culpable conduct." Id. (quotations and citations omitted); see Whitman & Co., Inc. v. Longview Partners (Guernsey) Ltd., No. 14-cv-12047-ADB, 2015 WL 4467064, at *9 (D. Mass. July 20, 2015) ("In those cases where courts have found Chapter 93A violations arising out of a breach of contract, additional services or advantages were wrestled from the aggrieved party through false promises."). The plaintiffs contend that the allegations in the Complaint reach this level of culpable conduct, because DRS initially assured ABC it would pay for ABC's unforeseen expenses but later refused to do so.

Undoubtedly, the plaintiffs' Complaint makes out a breach of contract claim for DRS's alleged failure to duly compensate ABC for its excavation and decontamination work. However, the plaintiffs have not alleged that DRS's initial promise to pay for all additional expenses was made in bad faith or with knowledge that DRS would not or could not pay for such expenses. See Monotype Imaging Inc. v. Deluxe Corp., 883 F. Supp. 2d 317, 323 (D. Mass. 2012) ("In order for the Chapter 93A claim to succeed, the law requires more than a mistake or honest dispute concerning the contract; some level of bad faith must be present."). Cf. Arthur D. Little, 147 F.3d at 51 (affirming the district court's finding of a 93A violation because the defendant

7

"repeatedly promised to pay the outstanding [ ] invoices, though it had no intent to do so"). Nor does the Complaint allege that DRS's eventual offer of payment was premised on the position that it was unwilling to pay for such additional expenses (i.e., that DRS reneged on its initial promise). Rather, the Complaint merely asserts that DRS's offer of payment, which exceeded the upper budget for the project, "was contractually below what ABC Soils was entitled to, and would have represented a significant loss of operating revenue." (Complaint ¶ 46). Without more, this allegation amounts to little more than a payment dispute. Because "[m]ere nonpayment of a debt normally does not justify finding c. 93A liability[,]" this is not sufficient to set forth a ch. 93A claim. N. Sec. Ins. Co. v. R.H. Realty Tr., 78 Mass. App. Ct. 691, 696, 941 N.E.2d 688, 692 (2011). As such, DRS's motion to dismiss the plaintiffs' ch. 93A claim is ALLOWED.[2]

### C. Negligent Infliction of Emotional Distress Claim

DRS also contends that Ms. Berger's NIED claim must be dismissed. In support of this contention, DRS argues that (1) the applicable statute of limitations period has run; (2) DRS owed no duty to Ms. Berger; and (3) the factual allegations in the Complaint amount to no more than a breach of contract.[3] This court concludes that the claim must be dismissed because DRS did not owe a duty to Ms. Berger.

---

[2] In their opposition to the Motion to Dismiss, the plaintiffs assert that their ch. 93A claim is viable under the doctrine of quantum meruit. (See Docket No. 12). Quantum meruit is an entirely separate theory of liability and one which the plaintiffs have not advanced in their Complaint. Accordingly, this court need not address the issue.

[3] In its Memorandum in Support of its Motion to Dismiss, DRS also argued that the plaintiffs' NIED claim must be dismissed insofar as it is asserted by ABC, because ABC is a corporation and thus incapable of emotional distress. (See Docket No. 7). However, the plaintiffs have since clarified in their opposition brief that the NIED claim is advanced by Ms. Berger alone, and not ABC. (See Docket No. 12).

To recover for negligently inflicted emotional distress, a plaintiff must establish (1) negligence; (2) emotional distress; (3) causation; (4) physical harm manifested by objective symptomatology, i.e., objective corroboration of the emotional distress alleged; and (5) that a reasonable person would have suffered emotional distress under the circumstances of the case. Rodriguez v. Cambridge Hous. Auth., 443 Mass. 697, 701, 823 N.E.2d 1249, 1253 (2005); see Sullivan v. Bos. Gas Co., 414 Mass. 129, 137, 605 N.E.2d 805, 809 (1993). Because NIED claims require a showing of negligence, as an initial matter the plaintiff must establish that he or she was owed a legal duty of care. Conley v. Romeri, 60 Mass. App. Ct. 799, 801, 806 N.E.2d 933, 936 (2004). Here, the plaintiffs assert that the implied covenant of good faith and fair dealing that adheres to the parties' contractual relationship creates such a duty. Assuming, without deciding, that the covenant of good faith and fair dealing extends beyond the parties to the agreement—ABC and DRS—to include Ms. Berger personally, this is still insufficient to establish a legal duty. A breach of the implied covenant of good faith and fair dealing "gives rise to a contract action, not one for negligence[,]" and thus does not create such a duty. Islam v. Option One Mortg. Corp., 432 F. Supp. 2d 181, 195 (D. Mass. 2006). Rather, "the remedy [Ms. Berger] seek[s] is within the confines of a breach of contract theory and not in tort." Doe v. Trs. of Bos. Coll., 892 F.3d 67, 95 (1st Cir. 2018).

The plaintiffs insist that Ms. Berger's NIED claim is nonetheless viable in light of Chery v. Metro. Prop. & Cas. Ins. Co., 79 Mass. App. Ct. 697, 700, 948 N.E.2d 1278, 1281 (2011), wherein a plaintiff brought suit against her insurance company for failure to timely pay medical bills. Although the court in Chery made reference to "emotional distress," the plaintiffs overstate its relevance. The court in Chery merely held that evidence of emotional distress may be used to

satisfy the injury or harm element of a ch. 93A claim; it has no bearing on the ability of a plaintiff to establish the existence of a legal duty. In Chery there was no question that the insurer owed its insured a duty. For the reasons described above, however, no such legal duty exists here. Accordingly, DRS's motion to dismiss Berger's NIED claim is ALLOWED.[4]

## IV. CONCLUSION

For all the reasons detailed herein, the "Defendant's Motion to Dismiss" (Docket No. 6) is ALLOWED as to the plaintiffs' ch. 93A claim (Count I) and NIED claim (Count III).


/ s / Judith Gail Dein
Judith Gail Dein
United States Magistrate Judge

---

[4] Because this court concludes that the plaintiffs have failed to set out a plausible NIED claim, the court need not reach DRS's other arguments.

10